**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23-CR-037(2) |
| Plaintiff, | : | JUDGE BARRETT |
| v. | : | |
| TYLER SNEED, | : | **UNITED STATES' SENTENCING MEMORANDUM** |
| Defendant. | : | |

## INTRODUCTION

Defendant Tyler Sneed joined a conspiracy to illegally obtain firearms that were obtained using stolen credit card information. Specifically, Sneed allowed a coconspirator who was not permitted to have firearms order firearms using his name, lied on the ATF forms he completed when picking up the firearms, retrieved firearms from FFL retailers to turn over to another coconspirator for resale or to keep for his own use, and recruited another straw purchaser to participate in the conspiracy. For this conduct, Sneed pled guilty to one count of Making a False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6). The plea agreement left the sentence to be determined by the Court.

Considering the seriousness of this offense, Sneed's relative culpability to his coconspirators, and lack of criminal history, the government believes that a below-Guidelines sentence of 24 months' imprisonment is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotations omitted).

## BACKGROUND

From May to June 2022, Sneed was part of a conspiracy where firearms were illegally obtained using stolen credit card information. As part of the conspiracy, Sneed's codefendant, Roderico Allen, attempted over a hundred times to place online orders for firearms with Guns.com, an online firearms dealer. At the time, Allen was on probation with the state of Ohio and, therefore, was prohibited from possessing firearms. Thus, in order to obtain the firearms, Allen recruited straw purchasers whose names he could use to place the orders. These straw purchasers, such as Sneed, were generally recruited because they had clean criminal histories and were able to legally purchase firearms.

Not only did Allen place the orders in others' names, but he also paid for them with stolen credit card information. For example, on May 21, 2022, Allen, without the knowledge or permission of victim J.N., knowingly used J.N.'s credit card information to make an online purchase of a Rain Ordnance Fallout 15 5.56 caliber rifle and a Cline Tactical C-19 8 Ball pistol, collectively valued at approximately $2,650.

Under federal law, the firearms could not be shipped directly to Sneed or any other coconspirator; they had to be shipped to a local federal firearms licensee (FFL), where the transfer could be completed after the buyer filled out an ATF Form 4473 – Firearms Transaction Record. One of the questions on the ATF Form 4473 was: "Are you the actual transferee/buyer of the firearm(s) listed on this form . . . .?" The Form clarified that the person was "not the actual transferee/buyer if [they were] acquiring the firearm(s) on behalf of another person" and that, if they were not the actual transferee/buyer, the FFL could not transfer the firearm to them.

As a result, Sneed and the other straw purchasers agreed with Allen that, when retrieving the firearms from the FFLs, the straw purchasers would falsely represent to the FFLs that they

were, indeed, the "actual transferee/buyer" of all of the firearms, when in fact they intended to provide at least some of the firearms to Allen.

Sneed's involvement did not end there, however. Instead, Sneed helped further the conspiracy by recruiting Kazyra Robertson as an additional straw purchaser for Allen. Significantly, in joining the conspiracy, both Sneed and Robertson understood that Allen was trying to obtain firearms under other people's names and that he was reselling the firearms. As evidenced by the text messages recovered from their phones, Sneed and Robertson were well aware of the role they played in illegally obtaining firearms for Allen. For example, on May 24, 2022, Sneed wrote to Robertson: "Rico [Allen] said you want a gun." Robertson responded, "I'm not buying no gun from him," and Sneed clarified: "No u get them online they new u pick them up out the gun store." When Robertson said, "uhn uhn they mean he gone get a gun for him in my name," Sneed responded, "man so what <u>I just let him do it in my name I told him if he sell them lmk so I can report it stolen</u>" (emphasis added). Robertson responded, "oh okay well what you think I should get?"

The text messages also show how Allen and Sneed directed Robertson where to go and which firearms to pick up. For example, on June 2, 2022, Sneed texted Robertson about three firearms Allen had ordered: "He [Allen] said them guns up there u can go grab them just takes pics of the numbers so when u drop them off." Robertson asked how many there were, and Sneed said three. Robertson asked, "Which guns am I getting babe," and Sneed responded, "It's a fn a glock and Draco." When Robertson later ran into difficulties picking up the firearms, Sneed instructed her to "call rico [Allen]."

The next day, June 3, 2022, Allen texted Robertson: "Ay this Rico . . . They said it came. Can you bring them I'll give you gas." Robertson asked, "all three[?]", and Allen responded, "yeah

3

they just called said all 3." Robertson responded, "Okay." Allen later warned Robertson that the (stolen) credit card he used might be declined: "Card could come back they a send them back that's it ion want them to." Robertson later texted Allen that she was at the store, and he told her to "lmk when you can bring that Glock," clarifying that she should bring it to his home on Ravenna.

Although Guns.com's fraud-prevention systems prevented many of the orders from being fulfilled, and although the Cincinnati FFLs identified some of the transactions as illegal "straw purchases" and stopped them, nine firearms were shipped from out of state to FFLs in Cincinnati, and Sneed and the other coconspirators succeeded in obtaining at least approximately six of these.

## **APPLICABLE LAW**

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Then, "the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a)." *Id.* at 49-50. These include (1) the nature and circumstances of the offense and the history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). The Court should impose a sentence sufficient but not greater than necessary to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

## ARGUMENT

**A. The government agrees with the Guidelines calculation and statutory requirements set out in the presentence report.**

The government agrees with the Guidelines calculations in the presentence report (PSR) of an offense level of 19 and a criminal history category of I, which results in a Guidelines range of 30-37 months' imprisonment.

The statutory maximum term of imprisonment for Making a False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. § 922(a)(6), is ten years. (PSR ¶ 93.) The maximum term of supervised release on this count is three years. (PSR ¶ 96.) Additionally, the maximum fine that can be imposed is $250,000, and there is a $100 mandatory special assessment. (PSR ¶¶ 100-101.)

Finally, restitution is mandatory under 18 U.S.C. § 3663(a)(3). As set forth in the PSR, restitution to Guns.com is due in the amount of $4,519.67, which is to be paid joint and several with codefendant, Roderico Allen. Additionally, of those funds, $1,021.11 should be paid joint and several with codefendant, Kazyra Robertson. (PSR ¶¶ 105-106.)

**B. The government respectfully submits that a consideration of the § 3553(a) factors shows that a sentence of 24 months is appropriate here.**

*Nature and circumstance of the offense*

The nature and circumstances of the offense weigh in favor of a significant prison sentence. By lying on the ATF Form 4473s and picking up firearms ordered by Allen, Sneed violated an important federal law designed to ensure that firearms dealers know the true identity of the person buying firearms. Among other things, that law allows dealers to run criminal background checks on the purchasers, which can help prevent criminals from obtaining deadly weapons. It also allows

5

law enforcement to determine who purchased a firearm that is later recovered at the scene of a crime. Sneed's circumvention of this law through his straw purchases therefore not only constituted serious offenses but also demonstrated a disrespect for the law.

Further, the seriousness of Sneed's offense is accentuated by the fact Sneed was successful in personally retrieving at least four firearms and assisting in Robertson's successful retrieval of two additional firearms. Thus, beyond lying on the ATF Form 4473s, Sneed's conduct also resulted in the trafficking of guns onto the streets and into the hands of criminals.

Finally, Sneed joined this conspiracy with eyes wide open. While it is unclear the extent to which Sneed knew about the identity theft aspect of the scheme, Sneed's text messages demonstrate that he was fully aware that Allen was trying to obtain firearms under other people's names and that he was reselling the firearms. Despite this, Sneed helped Allen further this goal by letting him use his name to place the orders, lying on the ATF Form 4473s, picking up the firearms from FFL retailers to turn over to Allen, and recruiting Robertson as an additional straw purchaser. Such conduct constitutes a serious offense, warranting a significant sentence.

*History and characteristics of the defendant*

As set forth in the PSR, this is Sneed's first significant encounter with the criminal justice system. Indeed, Sneed's criminal behavior in this case appears to be at odds with his upbringing and family history as reported in the PSR. While his mother had limited visitation, Sneed reported otherwise having a positive relationship with his family members and living an "average typical life." However, this lack of criminal history is an expected and typical characteristic of straw purchasers. If Sneed had been a convicted felon, he would not have been able to retrieve these firearms from the FFLs. As such, Sneed's history does not present much in the way of mitigating circumstances.

Nonetheless, Sneed's lack of criminal history and strong family support may suggest a reduced risk of recidivism. Additionally, Sneed graduated from high school in 2016 and was gainfully employed a security guard until he was arrested for the instant offense. It is also the government's understanding that Sneed has obtained a new job and has been performing well on bond, thus justifying the below-Guidelines sentence of 24 months.

*Promote respect for the law, deterrence, and protect the public*

Sneed's conduct impacted the safety of the community. Through his actions, he helped illegally obtain firearms and put the community at risk. While law enforcement recovered some of the firearms obtained by Sneed, two of the firearms that he assisted in obtaining remain unaccounted for. In other words, it is unknown where these firearms are and whose hands they are in. While law enforcement will continue in their efforts to recover these firearms, there is no telling when and where they will be recovered—if they ever will be. And most significantly, there is no way of predicting what damage they will cause in the meantime.

As a result, 24 months' imprisonment is not just appropriate, but necessary to promote respect for the law, deter Sneed and others from engaging in similar conduct, and to protect the public from future harm.

*Avoid unwarranted sentence disparities*

Additionally, a sentence of 24 months would also support the need to avoid unwarranted sentence disparities. As the Court is aware, the leader of this conspiracy, Roderico Allen, was recently sentenced to a total of 60 months' imprisonment[1]. Similarly, Zephaniah Jones, the leader

---

[1] Allen was sentenced to 36 months on Count 2 of the Indictment, which charged him with Making a False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6) and to 24 months on Count of 9 of the

of a related identity-theft and gun-trafficking conspiracy in a companion case (1:23-CR-36) was sentenced to a total of 79 months of imprisonment.[2]

While Sneed may not have been the orchestrating leader of this scheme, he played an integral role as a straw purchaser. Without straw purchasers, Allen could not have been successful in placing the orders for firearms. Additionally, of Allen's straw purchasers, Sneed was the most prolific in actually retrieving firearms. Here, the government is aware of six guns that were successfully transferred through this scheme, and Sneed was involved in all six of these transfers. Further, unlike Allen's other straw purchasers, Sneed also assisted in recruiting an additional member to the conspiracy. In short, while Sneed's involvement was admittedly less than Allen's, it was also greater than the remaining members of the conspiracy. Given these significant sentences and considering Sneed's relative culpability, the government believes that a sentence of 24 months' imprisonment would also support the need to avoid unwarranted sentence disparities.

*Restitution*

Finally, an adequate sentence in this case must include restitution. Here, Sneed's conduct caused Guns.com to suffer a loss of $4,519.67. Accordingly, Sneed should be ordered to pay restitution to Guns.com in the amount of $4,519.67, which is to be paid joint and several with co-defendant, Roderico Allen. Additionally, of those funds, $1,021.11 should be paid joint and several with Kazyra Robertson.

---

Indictment, which charged him with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). The sentences were ordered to run consecutive to each other for a total of 60 months imprisonment. *See* Doc. #98, *PageID* #s 475-76.

[2] Jones was sentenced to 55 months on Count 1 of the Indictment, which charged him with Conspiracy to Commit a Crime Against the United States in violation of 18 U.S.C. § 371, 24 months on Count 16 of the Indictment, which charged him with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1), and 55 months on Count of 19 of the Indictment, Making a False Statement or Representation to an Agency of the United States in violation of 18 U.S.C. § 1001(a)(2). Counts 1 and 19 were ordered to run concurrent to each other while Count 16 was ordered to run consecutive to Counts 1 and 19, resulting in a total of 79 months imprisonment. *See* Case No. 1:23-cr-36, Doc. #109, *PageID* #s 545-46.

## **CONCLUSION**

For the reasons given above, the government respectfully requests that the Court sentence Tyler Sneed to a below-Guidelines sentence of 24 months' imprisonment, two years of supervised release, $4,519.67 in restitution to Guns.com, and a $100 special assessment.

Respectfully submitted,

KENNETH L. PARKER
UNITED STATES ATTORNEY

*/s/Danielle E. Margeaux*
DANIELLE E. MARGEAUX (OH 98348)
JULIE D. GARCIA (CA 288624)
Assistant United States Attorneys
United States Attorney's Office
221 E. Fourth St. Suite 400
Cincinnati, OH 45202
513-684-3711
Danielle.Margeaux@usdoj.gov
Julie.Garcia@usdoj.gov